NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAVINO J. RUSSONIELLO, JR., <br><br> Plaintiff, <br><br> vs. <br><br> TWIN CITY FIRE INSURANCE COMPANY, et al., <br><br> Defendants. | Civil Action No.: 09-452 (PGS) <br><br> **OPINION** |

**SHERIDAN, U.S.D.J.**

This is an insurance coverage dispute between plaintiff Savino J. Russoniello, Jr. ("Plaintiff") and Twin City Fire Insurance Company ("Twin City").[1] Plaintiff, a New Jersey attorney, seeks a declaratory judgment that he is entitled to be provided a legal defense and indemnification for a malpractice lawsuit brought against him by a former client, Columbia West Orange Realty Corporation ("Columbia"). Twin City has denied Plaintiff's claim for coverage because Plaintiff's request was untimely under the terms of his policy. Currently before the Court is Defendants' motion for summary judgment.

---

[1] Plaintiff has named four defendants in his complaint (collectively, "Defendants"). As best can be established, Twin City is the only corporate entity who underwrote the insurance policy, and the only defendant subject to declaratory relief. All other Defendants are dismissed.

1

## I.

### A.   Columbia's Malpractice Action

In and around June 2003, Plaintiff was retained by Columbia to represent its interests in a proposed plan to redevelop an area within West Orange, New Jersey (the "Columbia Court Development"). (Compl. ¶ 5.) According to Columbia, the redevelopment project "was to contain a dynamic mix of restaurants, art galleries, shops, local service uses, community facilities, and loft residences." (Katz Decl. Ex E. at 1.) Columbia chose Plaintiff to represent it because, in its judgment, Plaintiff was "one of the foremost land use attorneys in Essex County, with nearly 30 years experience." (*Id.* ¶ 5.) Plaintiff's responsibilities were to "set the tempo for the project and keep it on track towards completion." (*Id.* at 2.) Columbia also hired George Turner, a "renowned architect," to evaluate and design the Columbia Court Development. (*Id.* ¶ 6.)

For reasons that remain unclear, the relationship between Columbia and Plaintiff quickly soured.[2] On September 23, 2003, after Plaintiff had allegedly cancelled a number of initial consultations, Columbia and Plaintiff met to discuss the Columbia Court Development. (Katz Decl. Ex. E. ¶¶ 7-9.) At this meeting, Columbia emphasized that Plaintiff must "get[] in front of township officials as soon as Mr. Turner completed his evaluations and drawings." (*Id.* ¶ 9.) Columbia further made clear that "time was of the essence." (*Id.* (emphasis omitted).) Nonetheless, in Columbia's view, Plaintiff dragged his feet on the project, and often failed to timely return its phone calls. (*Id.* ¶ 12.) According to Columbia, Plaintiff "began a pattern" where Columbia "would wait at least two

---

[2] The facts and legal issues underlying Columbia's malpractice action are sharply disputed. For example, Plaintiff repeatedly references deposition testimony he believes demonstrates that Columbia and Turner, not Plaintiff, are at fault. (*See, e.g.* Pl. Br. at 7.) These disputed facts, however, are not material to Defendants' present motion.

weeks" for returned phone calls, and even then, Plaintiff "provide[d] evasive, nondescript answers" to its inquires. (*Id.*) Moreover, according to Columbia, Plaintiff failed to properly communicate with Turner in drafting architecture plans that would meet the expectations of township officials. (*Id.* ¶¶ 19-22.)

Columbia intended to formally present its redevelopment project in or about May 2004. (*Id.* ¶ 16.) But it was not until October 26, 2005 that Columbia and its staff, including Plaintiff, attended a "'pre-variance meeting,'" which included the mayor, council president and township business administrator. (*Id.* ¶¶ 16, 30.) At this meeting, township officials allegedly assured Columbia that its plans were "great," and something that could "get done." (*Id.* ¶ 30.) However, township officials also expressed substantial concerns over the high density of Columbia's plan. (*Id.* ¶ 31.) In other words, township officials believed that the large number of residential and commercial units proposed by Columbia was excessive for the lot area. (Newman Cert. Ex. A 93:12-14.)

According to Plaintiff, Turner was to blame for the township's density concerns. He "had neither an idea what a site plan was, nor the requirements [for] preparing one." (Pl. Br. at 3.) Turner also became involved in "a conflict" with the township's planning director, Susan Borg, a licensed architect. (*Id.* at 4.) According to Borg, Turner "was very headstrong . . . and not a very good listener." (Newman Cert. Ex. F 28:9-10.) Furthermore, despite Plaintiff's alleged efforts, Turner failed to prepare a plan that addressed the excessive density issue raised by township officials. (*See* Pl. Br. at 3.)

Regardless of whether Plaintiff or Turner was to blame for the project's failures, by letter dated August 2, 2006, Columbia terminated Plaintiff's representation. The letter stated as follows:

This letter is to inform you that effective immediately your services

> are no longer required regarding our redevelopment plans in West Orange. We are dissatisfied with your representation. Your refusal to write a query letter to Susan Borg has accelerated this decision. . . . Therefore I request from you[] that you make available our file along with all attorney notes and memos to be picked up by myself [*sic*] at your office by Friday[,] August 4, 2006, or notify me of a similar date. Additionally[,] we request a refund of all remaining funds from check # 1395 on May 3, 2006 in the amount of $3,150.00.
>
> Furthermore[,] we request that there be no additional dialogue with anyone for any purpose without our consent regarding our company or our redevelopment plans in West Orange.

(*Id.* Ex. H.)

Plaintiff did not respond to Columbia's August 2, 2006 letter. Consequently, by letter dated October 12, 2006, Columbia again wrote to Plaintiff, this time suggesting his representation constituted malpractice and demanding return of its legal fees:

> I have yet to hear from you concerning returned fees as indicated in mine of August 2, 2006 and acknowledged by you on same date (see enclosures).
>
> I have had time to compare your file with mine and have determined that your representation of Columbia [] for the purposes of redevelopment of our owned properties was completely inadequate and may well be considered malpractice. You may have had another agenda, but it was not the proper legal protection or representation of our company. You may have cost us hundreds of thousands of dollars[,] if not millions of dollars. I am therefore making demand for the entire payment to your firm of eleven thousand one hundred and fifty dollars. I feel that your invoicing is also inaccurate.
>
> I therefore request a response by you no later than Monday October 16, 2006. I am hopeful of settling this matter amicably. In the event you do not agree to return our money, I will be forced to refer this matter to The Office of Attorney Ethics and The Client Protection Fund. A brief is also being prepared and will be forwarded to the attorney that has been selected who handles these types of matters.

(*Id.* Ex. I.)

After terminating Plaintiff's representation, Columbia hired Porzio, Bromberg & Newman P.C. and again submitted its redevelopment project to township officials on November 20, 2006. Nevertheless, due to the high level of density, township officials again rejected Columbia's project. (Newman Cert. Ex. D; *accord id.* Ex. F. 26:16-19.) By letter dated January 11, 2007, the Township stated that Columbia's plan remained "inappropriate in light of the location, size and configuration of the site and the character of the surrounding neighborhood." (*Id.*) In turn, Columbia filed a complaint in lieu of prerogative writ against the township and its officials challenging the denial.[3] However, on December 27, 2007, the Honorable Hector R. Velazquez, J.S.C., dismissed Columbia's challenge on summary judgment. (Newman Cert. Ex. E at 59.)

On August 26, 2008, Columbia filed a legal malpractice complaint against Plaintiff for his alleged failure to bring the Columbia Court Development to fruition. Columbia's malpractice action against Plaintiff remains ongoing.

### B.     Plaintiff's Declaratory Judgment Action

On October 23, 2008, about two years after the Columbia letter alleging malpractice, Plaintiff notified Twin City, of Columbia's complaint and requested coverage under his Policy. (Katz Decl. Exs. F, J.)[4] Plaintiff's Policy is a "claims made" policy, which means it provides coverage for "negligent acts for which a claim is made and communicated to the carrier within the policy period

---

[3] Columbia also sued Prism Green Urban Renewal Associates IV ("Prism"), a competitor of Columbia who apparently received approval for redevelopment of portions of downtown West Orange on June 28, 2006. (Pl Br. at 6; Katz Decl. Ex. E. ¶ 37.)

[4] The Policy was renewed for September 22, 2007 through September 22, 2008 (the "07-08 Policy"), September 22, 2008 through September 22, 2009 (the "08-09 Policy"), and September 22, 2009 through September 22, 2010 (the "09-10 Policy") (collectively, the "Policy"). (Def. 56.1 Stmt. ¶ 1.)

regardless of when those acts occurred." *Insite-Props., Inc. v. Jay Phillips, Inc.*, 271 N.J. Super. 380, 384 (App. Div. 1994) (internal quotations omitted). A claims made policy thus differs from an "occurrence" policy in the following respect: "[i]n an occurrence policy, the peril insured is the 'occurrence' itself. Once the occurrence takes place, coverage attaches even though the claim may not be made or some time thereafter." *Zuckerman v. Nat'l Union Fire Ins. Co.*, 100 N.J. 304, 311 (1985) (internal quotations omitted).

In accordance with the requirements of his claims made Policy, Plaintiff was required to notify Twin City of any claim against him "during the policy period or applicable extended reporting period . . . in writing to the company immediately but in no event later than sixty (60) calendar days after the expiration date of the policy period or applicable extended reporting period." (Katz Decl. Exs. A, B at 1.) Under the Policy, a "claim" is defined in part as "[a] demand received by an insured for money or services alleging a negligent act, error, omission or personal injury in the rendering of or failure to render professional legal services for others" by Plaintiff. (*Id.*) "Professional legal services" are defined in part as "services performed or advice given" for others in connection with Plaintiff's practice as a lawyer. (*Id.*) In this case, Plaintiff was obligated to report the allegation of malpractice under the 06-07 Policy by November 22, 2007, if not sooner, because he received notice of Columbia's malpractice allegation on October 12, 2006, which was within the term of the 06-07 Policy. The latest reporting date was 60 days after the expiration of the 06-07 Policy or November 22, 2007. (*Id.*)

Within Plaintiff's October 28, 2008 letter, he conceded that Columbia's October 12, 2006 letter marked "the first time the question of malpractice [was] raised." (*Id.* Ex. G.) Nonetheless, Plaintiff did not notify Twin City until October 28, 2008 because it was his subjective "belief" that

Columbia's letters amounted to nothing more than a "shake down" -- "a disgruntled client who wanted his money back because of poor planning on his part." (Newman Cert. Ex. A (67:3-7).)[5]

On October 29, 2008, defendant Garry Gordon notified Plaintiff that Twin City would not provide either defense or indemnity coverage to Plaintiff. (Katz Decl. Ex. J.) According to Gordon, Plaintiff's coverage demand was untimely because Plaintiff was required to provide notice to Twin City on or about October 12, 2006, but in no event later than sixty (60) calendar days after the expiration date of the 06-07 Policy. (November 22, 2009)[6]

## II.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotations omitted). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor -- that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007).

---

[5] Plaintiff also asserts that, on or about October 27, 2008, he received assurances from a Twin City representative, defendant Garry Gordon, that Columbia's claim was "bullshit." (*Id.* (78:25).)

[6] Defendants also now take the position that Columbia's August 2, 2006 letter constitutes a claim. A finding that the August 2, 2006 constitutes a claim could mean, among other things, that Plaintiff made a "material misstatement in the renewal application for the 08-09 Policy." (*Id.* Ex. J) However, the Court need not decide that issue for purposes of Defendants' motion for summary judgment.

### III.

Determining whether Defendants breached the terms of Plaintiff's Policy rests on a few well settled principles of New Jersey insurance law. "'[W]hen interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning.'" *Colliers Landard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) (quoting *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 183 N.J. 110, 118 (2005)). "If the policy language is clear, the policy should be interpreted as written, but if the policy is ambiguous, the policy will be construed in favor of the insured." *Id.* (alterations and internal quotations omitted). Furthermore, exclusions in an insurance policy should be construed narrowly in favor of coverage, but are "presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy.'" *Id.* (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997)).

Based on these principles of construction, and the undisputed facts of this case, summary judgment is appropriate since Plaintiff failed to notify Twin City in accordance with the terms of the Policy. *Cf. Zuckerman v. Nat'l Union Fire Ins. Co.*, 100 N.J. 304, 324 (1985) (strictly enforcing notice requirements of claims made policy). As an initial matter, the evidence demonstrates that Columbia's October 12, 2006 letter constitutes a "claim." Under the Policy, a "claim" is clearly defined as "[a] demand received by an insured for money or services alleging a negligent act, error, omission or personal injury in the rendering of or failure to render professional legal services for others." (Katz Decl. Exs. A, B at 1.). The October 12, 2006 letter constitutes a "claim" because it is a demand for money and it alleges "completely inadequate" representation from Plaintiff, which "may well be considered malpractice." (*Id.* Ex. I.) Moreover, the October 12, 2006 letter goes so far as to threaten that, in the event Plaintiff does not return its money, Columbia "will be forced to

8

refer this matter to [t]he Office of Attorney Ethics and [t]he Client Protection Fund." (*Id.*) And it notifies Plaintiff that "[a] brief is also being prepared and will be forwarded to the attorney that has been selected who handles these types of matters." (*Id.*) *Cf. Insite-Props., Inc. v. Jay Phillips, Inc.*, 271 N.J. Super. 380, 383-85 (App. Div. 1994) (letter describing "damages sustained" constituted "claim" under claims made policy). Indeed, even Plaintiff conceded in his October 28, 2008 letter to Twin City that Columbia's October 12, 2006 letter marked "the first time the question of malpractice [was] raised." (*Id.* Ex. J.)

It is also undisputed that Plaintiff's notification to Twin City of Columbia's claim was beyond the claim reporting period. Plaintiff admits that he did not notify Twin City of Columbia's claim until October 23, 2008, about eleven months after the reporting period ended. (Newman Cert. Ex. A (67:3-7).)

Finally, it is undisputed that the 06-07 Policy is the operative Policy governing any possible coverage for Columbia's claim, as opposed to succeeding policies. Under the terms of the Policy, "[a]ll claims arising out of the same or related negligent acts, errors, omissions or personal injury will be deemed to have been made when the first of such claims is made . . . whether such demands are made by one or more persons and will be treated as a single claim." (Katz Decl. Exs. A, B § 1, ¶ D.1.a.) Accordingly, any claims made by Columbia subsequent to its October 12, 2006 claim -- such as further threats of litigation or the filing of the malpractice complaint -- relate back to that October 12, 2006 claim and the 06-07 Policy. *Cf. Alpine Home Inspections, LLC v. Underwriters at Lloyd's London*, 2008 WL 4963518, at *3 (App. Div. Nov. 24, 2008) (rejecting argument that renewal of policy created "continuous coverage" so that notification of "claim" could be made at any point); *see also Insite-Props.*, 271 N.J. Super. at 386.

9

This case is closely analogous to the facts presented in *Zuckerman*. In *Zuckerman*, the plaintiff was an attorney who sued his insurance company seeking defense and indemnification in a malpractice action. Similar to this case, the issue was "whether the policy provision limiting coverage to claims filed with the insurance company during the policy period is to be strictly enforced so as to bar coverage for those claims reported to the company subsequent to the expiration date of the policy." *Id.* at 306. The plaintiff in *Zuckerman* did not provide timely notice of a claim against him because "he believed the claim was 'minimal' and could be settled within the deductible limits of his insurance policy." *Id.*; *cf. Alpine Home Inspections*, 2008 WL 4963518, at *3. The Supreme Court, however, enforced the terms of the claims made policy as written and affirmed summary judgment in favor of the insurer, reasoning that, given the nature of a claim made policy, any extension of the notice period would constitute "an unbargained-for expansion of coverage." *Zuckerman*, 100 N.J. at 320-22, 324.

Plaintiff's reluctance to make timely notice of Columbia's claim to Twin City is understandable. Plaintiff, a sole practitioner, was perhaps concerned that such notice may raise his malpractice premiums in the future. To curtail such increases, Plaintiff thought it would be more cost effective not to report Columbia's claim and to settle the client dispute informally, particularly given his doubts as its merits. To Plaintiff's chagrin, this was the wrong approach. The notice provisions within his claims made Policy are for the most part absolute.

Plaintiff does not challenge his failure to timely notify of Twin City of Columbia's claim against him. As Defendants point out, Plaintiff did not even file a statement of disputed material facts in accordance with Local Rule 56.1, deeming Defendants' statement of facts admitted. *Digiacomo v. Prudential Ins. Co. of Am.*, 501 F. Supp. 2d 626, 628 n.4 (D.N.J. 2007). Rather,

Plaintiff's only argument in opposition to summary judgment is based upon his subjective state of mind; that is, his "belief" that Columbia's letters amounted to nothing more than a "shake down," which negated his obligation to notify Twin City of Columbia's claim. (Newman Cert. Ex. A (67:3-7).) This argument, however, fails for two reasons. First, the definition of a "claim" does not include any subjective component, leaving it up to the insured to determine whether a demand has merit. *Compare Liebling v. Garden State Indemnity*, 337 N.J. Super. 447, 462-63 (App. Div. 2001) (exclusion in policy dependent upon insured's subjective assessment of whether he "knew or reasonably could have foreseen" malpractice). Second, as discussed, under New Jersey law, the notice requirements of a claims made policy are strictly enforced without regard to an insured's subjective assessment of the merits. *See Zuckerman*, 100 N.J. at 307 (belief that claim was "minimal" did not excuse untimely notification to carrier). Accordingly, Defendants' motion for summary judgment is granted.

## IV.

For the above-mentioned reasons, Defendants' motion for summary judgment is granted and Plaintiff's complaint is dismissed with prejudice.

_____
HON. PETER G. SHERIDAN, U.S.D.J.

Dated: May 20, 2010